

**SO ORDERED.**

**SIGNED this 12 day of June, 2012.**

_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

IN RE:                                                          CASE NO.

TP, INC.                                                        10-01594-8-SWH

      DEBTOR

**ORDER ALLOWING TRUSTEE'S MOTION TO MODIFY, AMEND,**
**OR SET ASIDE CONSENT ORDER, OR ALTERNATIVELY**
**TO REINSTATE AUTOMATIC STAY**

Pending before the court is the motion by the trustee, filed on April 21, 2011, to modify, amend, or set aside a consent order entered in this matter on February 17, 2011. The consent order modified the automatic stay to allow creditor Bank of America to proceed with foreclosure on certain of the debtor's properties. Bank of America opposed the motion, and both parties filed memoranda setting forth their respective positions. After a succession of continuances and efforts to resolve the case through mediation, a hearing took place in Raleigh, North Carolina, on April 17, 2012. For the reasons that follow, the trustee's motion will be allowed.

**STATUS OF CASE**

Much of the background of this case has been set forth in previous orders of the court, and in particular a memorandum opinion entered on April 21, 2011 (the "April 21, 2011 Order"). The matters addressed in that order are highly relevant to the motion presently before the court, so the

court will borrow liberally from its prior opinion in setting out the background insofar as it pertains to today's issue.

Bank of America holds a promissory note secured by deeds of trust on numerous parcels of the debtor's real property in Pender and Onslow counties (the "Property"). In June 2009, Bank of America initiated foreclosure proceedings on the Property after the debtor defaulted under the note, owing over $16 million in principal as well as for protective advances for property taxes, insurance, and certain legal expenses, and interest at the rate of 20% per annum since July 7, 2009. At that time, Bank of America also filed an action in Pender County Superior Court against the debtor, the debtor's principal Ronald Bryant, Mr. Bryant's wife (both were guarantors of the debt), and another company affiliated with the debtor.

The debtor filed a petition for relief under chapter 11 of the Bankruptcy Code on March 1, 2010. The state action remained pending, and in October 2010 Bank of America obtained a judgment against Mr. and Mrs. Bryant, as guarantors of the debtor, in an amount in excess of $27 million. The debtor has consistently maintained that the judgment was obtained in an amount and under circumstances that indicate culpable conduct by others, and that its debt to Bank of America was premised upon similar conduct.

On March 4, 2011, Bank of America filed a motion asking that the court appoint a trustee or convert or dismiss the case, arguing in support thereof that, among other things, the debtor had failed to adhere to the terms of a consent order between the debtor and Bank of America. That consent order, entered on February 17, 2011 (the "Consent Order"), is the subject of the current motion. The Consent Order lifted the automatic stay to permit Bank of America to complete state court foreclosure proceedings and directed the debtor's (former) counsel to disburse to Bank of

America the cash collateral he had been holding in his attorney trust account. (The debtor's former counsel, Mr. Haight, moved to withdraw from this case on February 22, and his motion was granted on February 24, 2011.) The debtor was unrepresented for a period of time and filed a motion to modify, set aside, or amend the Consent Order on March 16, 2011, while still unrepresented.

The court did not convert or dismiss the case but instead, in an order dated April 6, 2011, the court allowed Bank of America's motion to the extent it requested appointment of a Chapter 11 trustee. Algernon L. Butler III was appointed as trustee by order entered on April 11, 2011. Ten days later, on April 21, 2011, the trustee filed his own motion to modify, amend, or set aside the Consent Order. In his motion, he incorporated and adopted the debtor's similar motion of March 16, 2011, and in addition stated that an adversary proceeding initiated by the debtor against Bank of America had merit and would be pursued by him; that if Bank of America were permitted to foreclose on property of the estate, the bank would be unjustly enriched and profit from illegal conduct; and that a discrepancy in platting for a certain property subject to the Consent Order (the "Oceanaire Property") would, if not resolved prior to sale, cause the property to be sold at a deflated price. The trustee further represented that:

> Since his appointment, the Trustee has engaged into an investigation of the property of the estate including its [sic] [the debtor's] claims against BOA and has met with both counsel for BOA and the undersigned. The allegations and undisputed facts regarding these matters appear at this time to be serious and substantial enough to warrant additional investigation and, most immediately, the entry of an interim order staying the Consent Order of February 17, 2011 in order to preserve the status quo for a short period of time and prevent BOA's impending foreclosure of the Property of the bankruptcy estate pending the opportunity for a full hearing on the Motion.

Trustee's Mot. To Modify, Amend or Set Aside Consent Ord. at p. 3 ¶ 9.

Also on April 21, 2011, this court supplemented its April 6, 2011 order appointing a

chapter 11 trustee with a memorandum opinion setting forth the bases for that decision.  The

debtor's failure to comply with all reporting and tax requirements did not provide sufficient cause

for dismissal, the court explained, and the best interests of the estate would be served by

appointment of a trustee, as follows:

> "Section 1112 and Section 1104 read together require the court to make a
> finding as to what remedy is in the best interest of the creditors and the estate."  In
> re Sydnor, 431 B.R. 584, 600 (Bankr. D. Md. 2010).   As the [Sydnor] court
> observed, the "distinguishing factor between converting [a case] to chapter 7 and
> appointing a Trustee in Chapter 11 is the expanded possibility in Chapter 11 for a
> trustee using independent judgment and good management to direct the affairs of the
> estate[s] including on-going operations (if any) in order to optimize recovery for the
> creditors and the estate."  Sydnor, 431 B.R. at 600.
>
> * * *
>
> The chapter 11 trustee, in consultation with the debtor's current counsel, will
> be able to fully evaluate the debtor's claim that its high indebtedness to Bank of
> America (the amount of that debt, in excess of $16 million, is the main reason the
> debtor cannot fund a plan) is derived from a prolonged series of unlawful and
> manipulative acts by Bank of America throughout the course of its business
> relationship with the debtor and Mr. Bryant.  The debtor's allegations against Bank
> of America are serious ones.  The appointment of a chapter 11 trustee to assess
> whether creditors and the estate hold legal claims of potentially substantial value is,
> certainly, in the best interests of the estate and those creditors.

April 21, 2011 Order at pp. 6-8.

Thus, fortuitously, the court's memorandum opinion directing the trustee to  investigate the

debtor's claims of systemic wrongdoing by Bank of America was entered on the same date on which

the trustee filed his motion, wherein he stated that he already had initiated such an investigation,

which disclosed "serious and substantial" grounds upon which to continue to investigate the debtor's

claims.  Resolution of the trustee's motion was consensually delayed during prolonged attempts at

mediation in two adversary proceedings involving the debtor and Bank of America, both of which

proved to be unsuccessful. In addition, the case was converted to Chapter 7 on October 4, 2011.

After a telephonic status conference on March 19, 2012, the court allowed the parties until

March 30, 2012 to provide supplemental briefs on the pending motion. A hearing was held on

April 17, 2012, and with the permission of the court the parties again filed supplemental memoranda.

## DISCUSSION

The trustee's and debtor's motions set forth differing legal and factual bases for

reconsideration of the Consent Order. The debtor's original motion, which the trustee's motion

incorporated, relied upon Rules 60(b)(1), (2), (3), and (6) of the Federal Rules of Civil Procedure

(made applicable by Federal Rule of Bankruptcy Procedure 9024) to support setting aside the

Consent Order based on "newly discovered evidence" and the alleged underlying fraud and

misrepresentation throughout Bank of America's dealings with the debtor through its agent, Jon

Joyner.

In support of his motion, the trustee takes a different tack and argues that the bases for Bank

of America's original motion to lift the automatic stay are no longer applicable and were rendered

moot by the appointment of the trustee, such that the Consent Order is based upon "circumstances

that no longer exist," and that enforcement of the Consent Order now would be to the detriment of

the estate and other creditors. In his first supplemental brief, the trustee bases his argument that the

court has authority to set aside the Consent Order pursuant to § 105; on provisions of North Carolina

state law which permit a property owner to apply to a judge to enjoin a foreclosure sale on both

equitable and legal grounds; and on the court's injunctive authority under Rule 65 of the Federal

Rules of Civil Procedure, made applicable by Rule 7065 of the Federal Rules of Bankruptcy

Procedure. The trustee contends that the present status of this matter is that Bank of America's

interests are protected by the appointment of the trustee and the conversion of the case, and that, in contrast, allowing the foreclosure to proceed would place the bankruptcy estate at risk. The "proper management of the Estate, including the administration of claims and the necessary liquidation of property of the estate in order to pay them," the trustee argues, "is a function for this Court to exercise, not the Clerk of Superior Court of Pender County before whom the foreclosure proceedings are pending." Debtor's Mem. of March 30, 2012 at p. 9.

The trustee believes that it is "imperative for this Court to thoroughly analyze the entire relationship between the Debtor and BOA, and the legal claims and defenses emanating therefrom, before permitting BOA to exercise remedies that the court might later find to have been inappropriate." Id. at pp. 9-10. According to the trustee, there is a substantial likelihood of success on the merits of the trustee's defenses to Bank of America's claim and on the claims in the adversary proceedings, though he does not at this time delve into the specifics of them. Instead, he maintains that the overarching goal of ensuring maximum and equitable distribution for creditors in this chapter 7 matter can be achieved only by setting aside the Consent Order and reinstating the stay. If Bank of America proceeds to foreclosure "prior to the determination of the validity of its claim, the defenses thereto, and the Adversary Proceedings," the trustee cautions, then a single creditor would have access to property that would otherwise be property of the estate, and the sale of it would result in irreparable harm that could not be undone. Id. at p. 11.

Finally, in the joint supplemental memorandum filed by the trustee and debtor (collectively, in the context of how these arguments are presented, "the trustee"), the trustee contends that the *real* issue is not presently framed around merely the Consent Order but is instead a more fundamental

question of whether the court will divest itself of jurisdiction, and the trustee of his powers, over the estate.

In response, Bank of America forthrightly concedes that the court has the authority and discretion to reinstate the stay and to set aside the Consent Order, but argues that the court should not exercise that power. Even if it ultimately was to determined that the trustee was entitled to some equitable remedy of rescission or equitable subordination, Bank of America argues, the unavailability of the Property, if sold, would result in no harm to the bankruptcy estate because the trustee would remain entitled to money damages. Moreover, a foreclosure sale simply "achieves the same result that the Trustee ultimately seeks; namely, liquidation of the assets of the Debtor." Bank of America Supp. Brief at p. 5, fn. 4.

The court concludes, after thorough consideration of all the foregoing, that it is within the court's discretion and appropriate in this instance to allow the trustee's motion to reinstate the stay.[1] The circumstances that prompted entry of the Consent Order (and in particular that order's lifting of the stay) are now vastly different and, if Bank of American were to seek lifting of the stay at this junction, that motion would be denied. The grounds upon which Bank of America first sought the Consent Order, and the basis upon which this court gave its approval to that order, no longer exist. The bank argued at the hearing that the property was subject to damage and deterioration, as it was when the Consent Order was entered, but the court is not persuaded that there are any meaningful circumstances affecting the physical condition of the property that weigh in favor of allowing Bank of America to foreclose.

---

[1] Because the court has determined to exercise its authority under § 105, it will not discuss the applicability of Rule 60.

Under 11 U.S.C. § 105, the court is empowered to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." In this instance, the debtor's chapter 7 case and all the legal questions related to it (meaning those arising in the context of the adversary proceedings and the trustee's investigation of the debtor's claims against Bank of America) will most effectively be resolved if the orderly liquidation of the debtor's estate proceeds apace and does not also include a foreclosure sale of the debtor's property.

Quite frankly, it is in Bank of America's interest for the sale of the Property to take place under the oversight and governance of the trustee, and the bank's insistence on maintaining the terms of the Consent Order strikes the court as somewhat odd and impractical. As Bank of America points out, the trustee's ultimate goal is the same as its own – to sell the property in such a way that the value of the debtor's estate is maximized. Bank of America has consensually delayed foreclosure and engaged in extended mediation, which is an obvious indication that it perceives no imminent harm in delay or it would have pursued foreclosure during the past year. The trustee represented that the Property was insured (and the current "forced" insurance, which has been in effect throughout mediation, will be upgraded and paid for out of rental proceeds); tax obligations are current; the rental properties are rented and productive; and rents are held in segregated accounts. Overall, the trustee contends, the Property is both preserved and protected. The court agrees that the trustee's efforts to preserve and market the Property are sufficient to protect the bank's interests under the circumstances, and constitute adequate protection for Bank of America's interests.

## CONCLUSION

For the foregoing reasons, the trustee's motion to set aside the Consent Order and to reimpose the automatic stay is **ALLOWED**.  The Consent Order entered in this court is, to the extent it lifts the automatic stay or is otherwise inconsistent with this order, hereby **SET ASIDE**.

**SO ORDERED.**

## END OF DOCUMENT